IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| ALLISON SCHNEIDER, an individual, | ) | Case No. _____ |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | **COMPLAINT AND** |
| | ) | **JURY DEMAND** |
| LAMINATED WOOD SYSTEMS, INC., a | ) | |
| Nebraska Corporation, | ) | |
| | ) | |
| Defendant. | ) | |

COMES NOW the Plaintiff, ALLISON SCHNEIDER (hereinafter "Plaintiff" or "Allison"), and for her claims against Defendant LAMINATED WOOD SYSTEMS, INC., a Nebraska Corporation, (hereinafter "Defendant" or "LWS"), alleges as follows:

1. Plaintiff Schneider is currently a resident of Pleasant Valley, Missouri.

2. Defendant LWS is a Nebraska Corporation doing business at 1327 285th Road, Seward, Nebraska.

3. This Court has original jurisdiction over the claims arising under Federal law and concurrent jurisdiction over the state law claims. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. Section 1331 and the Court's pendent claim jurisdiction under 28 U.S.C. §1367(a).

4. Venue is appropriate in this District under 28 U.S.C. §§1391(b) and (c).

5. The acts giving rise to Plaintiff's claims occurred during the course of her employment with Defendant in Seward County, Nebraska.

6. On or about October 17, 2019, less than 90 days prior to the filing of this Complaint, the Nebraska Equal Opportunity Commission issued a determination on Plaintiff's charge, NEB 1-18/19-7-49756-RS.

1

7. On or about October 31, 2019, less than 90 days prior to the filing of this Complaint, the U.S. Equal Employment Opportunity Commission ("EEOC") issued Plaintiff a Dismissal and Notice of Rights to Plaintiff on charge number 32E-2018-00638.

## FACTUAL BACKGROUND

8. Plaintiff was hired by Defendant on September 19, 2016, most recently in an "Engineer" job position.

9. During her employment, Plaintiff was the only female engineer working for the Defendant.

10. From the time she started working for Defendant, the Engineering Services Manager, Dan Policky (hereinafter "Policky"), started harassing her due to her sex. On several occasions, Policky invited Plaintiff to attend events in the Seward community with him. Plaintiff politely declined all of Policky's invitations.

11. Following Plaintiff's refusal of Policky's invitations, Policky would react negatively and dismissively, with his words, tone and body language, to everything Plaintiff said or did while at work. Policky continuously addressed Plaintiff as 'Ally' and 'Kid'. Plaintiff never gave him permission to give her these nicknames. Policky's emails to Plaintiff were disrespectful in both substance and tone.

12. On December 19, 2016, Policky called Plaintiff's cell phone and left a voicemail. Policky also texted Plaintiff on her cell phone. Plaintiff never gave Policky her phone number. Defendant gave Policky Plaintiff's personal cell number.

13. Around the same time in December 2016, Policky requested to be a "friend" with Plaintiff on Facebook. Accepting the request would give Policky access to information about

Plaintiff's personal life, including photos in swimwear and her whereabouts. Plaintiff accepted Policky's request for fear of his retaliation if she declined.

14. Shortly after receiving new office furniture in the spring of 2017, Plaintiff told Policky she was grateful for the new furniture Defendant purchased for her office. He responded in her doorway "Well you should be!"

15. Plaintiff was told by coworkers that Policky complained about her PTO while she was gone and that Policky does not think her agreement with Defendant regarding her PTO was fair. Thereafter, whenever Plaintiff took PTO, Policky would be sick and take PTO the Monday after Plaintiff returned to work.

16. In July 2017, Plaintiff complained about Policky's harassment to supervisor Brian Hitz (hereinafter "Hitz") and LWS Owner, Vice President of Finance and Human Resources, Matt Roberts (hereinafter "Roberts"). Plaintiff also told Hitz and Roberts about Policky's complaints about her PTO. They both told her to just ignore Policky's comments and behavior.

17. In July 2017, Policky invited Plaintiff to attend an event at Junto Winery on July 14, 2017. Hoping that Policky's harassment would lessen, Plaintiff agreed to attend and brought a female friend with her to the event.

18. On September 22, 2017, Policky told Plaintiff's father, who was on company property at the time, "your daughter hates working here." Plaintiff does not know how Policky knew who her father was, having never introduced them to one another.

19. From the time she was hired, Plaintiff continuously requested that Defendant supply her with engineering software, AutoCAD, on her computer so that she could better perform her job duties. Male employees were given the software, but Plaintiff's request was never granted.

20. In December 2017, Policky chose not to attend the Christmas party that Plaintiff had planned.

21. From February 28, 2018 going forward, Policky stopped saying good-bye to Plaintiff when leaving the office. However, Policky would say good-bye, using first names, to all his male coworkers in the engineering department.

22. On March 20, 2018, Hitz requested an informal progress discussion with Plaintiff. Hitz stated "our learning curve is still pretty steep." The progress discussion never took place.

23. On March 21, 2018, Plaintiff told Roberts that Policky was bothering her about her PTO and it leads her to believe he is upset about it. Roberts said he would meet with Hitz and Policky to "see if he has a problem with her." Plaintiff communicated that Plaintiff was uncomfortable with it all and that she does not like conflict. Roberts communicated he didn't have experience resolving these conflicts and would have to first perform research.

24. On April 5, 2018, Policky walked into Plaintiff's office, and stated "I hate coming here." Plaintiff never heard Policky say that to anybody else. Plaintiff felt disrespected and humiliated that Policky spoke to her in that way.

25. On April 9, 2018, Plaintiff told Hitz she was being bullied by Policky and her work was being overcorrected by him. Plaintiff started to cry and told Hitz she was embarrassed to tell him sooner. Hitz said Policky's recent comments to her dad and to her in her office were inappropriate.

26. Later on, Plaintiff also met with Roberts and Hitz again and told them that she believed Policky's actions had to do with her being a female. Hitz stated he was sorry the situation was happening to her. Roberts stated Policky is "very emotional." Roberts told her that

her coworkers described her as "I think I am better than everyone else." Plaintiff told him "no, I don't think that at all," and she felt like she was being blamed for the problem.

27. On April 10, 2018, Policky demanded that Plaintiff speak alone with him behind closed doors. Plaintiff was walking by Policky's office, when he asked her to come speak with him. Plaintiff stood in the office door way, and Policky commanded that she "shut the door." Plaintiff felt extremely scared, but agreed with his request for fear that he would get very emotional if she did not. Policky stated that Roberts and Hitz informed him that he intimidates her. He asked her what he does that intimidates her. Plaintiff told Policky that she was uncomfortable with him telling her dad that she hated working here, which was untrue. Policky immediately and confidently denied that he ever told her dad she hated working here, claiming that he would never say that even jokingly. Policky stated "I want you to feel welcome here. I want you to feel like one of the guys, I mean gang."

28. Later that week, Plaintiff met with Hitz and Roberts in Hitz's office. Plaintiff started to cry when explaining to them what had happened with Policky and that he had access to her personal life on Facebook. Hitz told Plaintiff that she was wasting company time by talking about her problems with Policky. Hitz loudly proclaimed that this was the first time he had heard of any of these problems that Plaintiff was describing. Roberts suggested Plaintiff take the next day off, Hitz denied it. Plaintiff felt her problems with Policky were not taken seriously. Roberts stated "we don't want to lose both of you" regarding Policky and Plaintiff.

29. On April 13, 2018, Roberts sent an email to Plaintiff acknowledging that Policky's actions were interrupting her personal life and her ability to focus on her work.

30. On April 16, 2018, all male employees went to IEEE, a technical engineering trade show. Plaintiff was not allowed to attend. In January 2018, Plaintiff asked about attending

this trade show to Hitz, but he never responded. The previous fall, Plaintiff was told by Seth Gutz, Vice President of Sales, and Mr. Sid Kamprath in Marketing that Plaintiff would attend this trade show.

31.     On April 25, 2018, Plaintiff's quarterly profit check was cut in roughly half, although the sales numbers were said to be a record high during the quarterly meeting. Roberts later claimed that due to someone being promoted, her share was less.

32.     From the time Plaintiff complained about Policky harassing her, Defendant did nothing to address the complaints and Policky continued to harass her by not turning his part of their shared work on time, causing Plaintiff to miss her deadlines.

33.     On April 27, 2018, in an email to Roberts and Hitz, Plaintiff communicated that her work was being delayed by Policky, giving the recent example of Policky not giving her project back on time to the customer.

34.     The following week, Hitz questioned Policky about Plaintiff's project whereabouts and Policky quipped, "What the hell is this?" to a common design configuration. Plaintiff felt humiliated and degraded. LWS employee, Mr. Wilken, then finished the late AutoCAD project drawings within hours for a singular pole project.

35.     Later in the week, Roberts threatened to not allow Plaintiff to use her accumulated PTO.

36.     On May 9, 2018, Hitz denied Plaintiff's attendance to an annual seminar even though Plaintiff had gone the previous year. Hitz said Plaintiff needed to focus on her engineering skills, while in 2017 Plaintiff went to the seminar with just months of experience.

37.     On June 5, 2018, Hitz sent Plaintiff an email threatening discipline up to termination based on over-exaggerated and untrue statements related to her performance.

38. The next day, Hitz returned her work and stated "I wouldn't have expected you to know that" and has said numerous times "Everyone makes mistakes."

39. Thereafter, Hitz began using a computer highlighter for the first time to mark Plaintiff's mistakes, and Plaintiff felt that he was recording them for proof of termination.

40. On June 22, 2018, Roberts and Hitz gave Plaintiff her first corrective action memo of her employment. To the best of Plaintiff's knowledge, Defendant did not do this with other male employees who had job performance issues. Roberts asked if Plaintiff had any questions or concerns. Plaintiff asked Roberts and Hitz to give examples of the errors that she allegedly made to warrant the corrective action. Roberts and Hitz gave no examples and Hitz hurriedly shuffled the signed corrective action into his desk. Plaintiff stated the CAD Techs do not turn in her work on time and communicated her work is delayed by them. Hitz replied that her concern had nothing to do with the current conversation. The corrective action memo threatened termination with a decision to be made on July 10, 2018.

41. On June 25, 2018, Plaintiff emailed Hitz to remind him she would be using PTO on June 29, 2018 and July 5 and 6, 2018. He did not respond. On June 28, 2018, Plaintiff emailed Hitz she would be taking PTO at noon, and later told him she was going to see a doctor as she was not feeling well.

42. On July 2, 2018, Plaintiff noticed on the calendar Policky had also now added he was taking vacation July 5 through July 10, 2018.

43. On July 9, 2018, Roberts and Hitz terminated Plaintiff's employment. Hitz communicated that Plaintiff had not improved but did not specify what Plaintiff had done wrong. He also communicated the time to decide the termination was very limited.

44. Prior to her termination, Plaintiff's job performance was satisfactory.

45. Plaintiff's lost wages resulting from Defendant' wrongful conduct are in excess of $29,000 and are continuing. As part of her compensation, Plaintiff also was eligible for employment benefits in amount that is currently unknown to Plaintiff and will be subject to further discovery. As part of her compensation, Plaintiff was paid a quarterly profit sharing check based on the performance of the company each quarter.

46. As a result of Defendant's wrongful conduct, Plaintiff suffered lost wages, compensatory damages, including emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and has also incurred attorney's fees and other costs that are continuing.

## COUNTS I & II
## SEX DISCRIMINATION-HARASSMENT
### 42 U.S.C. § 2000e-2(a)(1) and Neb. Rev. Stat. §48-1114

47. Plaintiff hereby incorporates by reference paragraphs 1 through 46 as if fully set forth herein and states:

48. During her employment, Plaintiff was subjected to harassment, either through words or actions, based on sex and/or gender by Defendant's employee;

49. Such conduct was unwelcomed by Plaintiff;

50. Such conduct was sufficiently severe or pervasive so as to unreasonably interfere with Plaintiff's work performance, or create an intimidating, hostile or offensive work environment;

51. At the time such conduct occurred and as a result of such conduct, Plaintiff believed her work environment to be hostile;

52. Defendant knew or should have known of its employee's wrongful conduct;

53. Defendant failed to take prompt and remedial measures to stop it;

54. The unlawful employment practices complained of above were malicious or recklessly indifferent to Plaintiff's rights as protected by Federal law, and by its conduct, Defendant is subject to punitive damages.

55. As a proximate result of Defendant's actions, as outlined above, Plaintiff has in the past and will in the future suffer mental and emotional harm, anguish, humiliation, embarrassment, loss of dignity, lost wages and benefits, and front pay and benefits. Plaintiff has incurred, and will continue to incur attorney's fees and costs in this matter.

## COUNTS III & IV
## SEX DISCRIMINATION-DISPARATE TREATMENT
## 42 U.S.C. § 2000e-2(a) (1) and Neb. Rev. Stat. §48-1114

56. Plaintiff hereby incorporates paragraphs 1 through 55 as if fully set forth herein and states:

57. Defendant discriminated against Plaintiff with respect to terms and conditions of her employment on the basis of her sex in violation of Title VII and the NEFEPA by treating her differently than similarly-situated male coworkers.

58. Plaintiff suffered adverse action, including but not limited to disciplinary action, unequal pay and termination of her employment.

59. Plaintiff's sex was a motivating factor in Defendant's conduct towards and actions taken against Plaintiff.

60. The unlawful employment practices complained of above were malicious or recklessly indifferent to Plaintiff's rights as protected by Federal law, and by its conduct Defendant is subject to punitive damages.

61. As a result of Defendant's acts and omissions, Plaintiff has in the past and will in the future suffer damages including, but not limited to, mental and emotional distress; fear; anguish; humiliation; embarrassment; lost enjoyment of life; lost wages, benefits, future earnings, and other emoluments of employment.

## COUNTS V & VI
## RETALIATION
### 42 U.S.C. § 2000e-3 and Neb. Rev. Stat. §48-1114

62. Plaintiff hereby incorporates by reference paragraphs 1 through 61 as if fully set forth herein and states:

63. During her employment, Plaintiff engaged in protected activity, including but not limited to complaining of sex discrimination;

64. Defendant took adverse employment action against Plaintiff, including but not limited to subjecting her to different terms and conditions of employment, increased scrutiny of her work performance and termination her employment;

65. There is a causal connection between Plaintiff's participation in protected activity and Defendant's adverse action against her;

66. The unlawful employment practices complained of above were malicious or recklessly indifferent to Plaintiff's rights as protected by Federal law, and by its conduct, Defendant is subject to punitive damages.

67. As a result of Defendant's retaliation, Plaintiff has in the past and will in the future suffer injuries and compensatory damages, including, but not limited to mental and emotional distress; humiliation; fear, embarrassment; lost enjoyment of life; lost wages and benefits; front pay and other emoluments of employment.

## COUNT VII

## NEBRASKA WAGE PAYMENT AND COLLECTION ACT

### Neb. Rev. Stat. § 48-1229 et seq.

68. Plaintiff hereby incorporates paragraphs 1 through 67 as if fully set forth herein and states:

69. Defendant meets the definition of employer set forth in Neb. Rev. Stat. § 48-1229(1), and as an employer, Defendant is subject to, and is required to abide by, the provisions of the Nebraska Wage Payment and Collection Act, Neb. Rev. Stat. § 48-1228, et seq. (hereafter "NWPCA").

70. Plaintiff meets the definition of employee set forth in Neb. Rev. Stat. § 48-1229(2), and as an employee, Plaintiff is entitled to the benefits and protection of the NWPCA.

71. Plaintiff performed labor and services for Defendant for which she was not compensated for including her 2018 2nd Quarter Profit Sharing earnings for her work for Defendant during April, May and June 2018.

72. The records concerning the exact amount Plaintiff earned are in the exclusive possession and control of the Defendant and are not known to Plaintiff at this time. However, Plaintiff estimates that she was owed at least $843.32 for profit sharing for 2nd Quarter 2018.

73. Defendant willfully failed to pay Plaintiff her wages in violation of the NWPCA and it has been more than thirty (30) days since the regular payday designated by Defendant.

74. In addition to the wages owed, Plaintiff is entitled to the costs of this suit, plus attorney's fees in an amount not less than 25% of her unpaid wages under the Agreement, pursuant to Neb. Rev. Stat. § 48-1231.

75. Pursuant to Neb. Rev. Stat. § 48-1232(1), an equal amount of the judgment rendered herein should be recovered from Defendant and placed in a fund to be distributed to the common schools of this State. Because Defendant's nonpayment of wages to Plaintiff was willful, an amount equal to two times the amount of unpaid wages should be recovered from Defendant and placed in a fund to be distributed to the common schools of this State, pursuant to Neb. Rev. Stat. § 48-1232(2).

## COUNT VIII

## BREACH OF CONTRACT

76. Plaintiff hereby incorporates paragraphs 1 through 75 as if fully set forth herein and states:

77. Plaintiff had a valid oral contract with Defendant that provided for Defendant's payment to Plaintiff a quarterly profit sharing check as part of her compensation for the services she performed for Defendant.

78. Defendant breached its contract with Plaintiff by refusing to pay her the 2nd Quarter Profit Sharing check in 2018.

79. Plaintiff complied with the terms of her contract with Defendant.

80. Plaintiff has suffered damages as a proximate result of Defendant's breach of contract.

## DAMAGES

81. Plaintiff hereby incorporates by reference paragraphs 1 through 80 as if fully set forth herein and states:

82. As a result of Defendant's discrimination, retaliation and other wrongful conduct, Plaintiff has suffered damages and seeks the following relief:

    a.    Payment of her 2nd quarter profit sharing compensation;

    b.    Back pay and lost benefits to the time of trial;

    c.    Front pay including retirement and other benefits;

    d.    Compensatory damages for past and future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses;

    e.    Punitive damages under Federal law;

    f.    Attorney's fees, expert witness fees and other reasonable costs; and,

    g.    Pre-judgment and post judgment interest.

WHEREFORE, Plaintiff prays for judgment against Defendant for all her general, special and punitive damages, for costs, attorney's fees, interest and for such other relief as just and equitable.

Plaintiff demands a trial by jury.

Dated this 13th day of January, 2020.

                            ALLISON SCHNEIDER, Plaintiff

BY:    s/ Jennifer Turco Meyer  
        Jennifer Turco Meyer, #23760  
        Of Dyer Law, P.C., LLO  
        2611 S. 117th Street  
        Omaha, Nebraska 68144  
        (402) 393-7529  
        (402) 391-2289 facsimile  
        Jennifer@dyerlaw.com  
        Attorneys for Plaintiff